In the Matter of the Probate of the Last Will and Testament
of JOHN GRATTON, Late of the City of Plattsburgh, Clinton
County, New York, Deceased.
DELIA GRATTON and Others, Appellants; MARY AYOTTE and
JOSEPHINE LAMONDE, Respondents.

Third Department, January 5, 1921.

Wills — probate — when testimony of proponents contradicting
evidence in behalf of contestants not incompetent under section
829 of Code of Civil Procedure — purpose of said section.

Where in an action for the probate of a will, an attorney who acted as
counsel in a separation action between the testator and a woman with
whom he had lived after his first wife had deserted him, testified in behalf
of the contestants that at a meeting with reference to said action several
years before the execution of the will at which others were present one
or the other of the testator's daughters, beneficiaries under his will, made
a request that her father make a will in behalf of herself and the other
daughter, and that the father refused to make such a will at that time,
and such evidence was offered for the purpose of showing a disinclination
on the part of the father to make a will in behalf of said daughters and
to show an importuning on their part, testimony by one of the daughters
that neither she nor her sister made such a request, was not incompetent
under section 829 of the Code of Civil Procedure.

The purpose of said section is to protect the estate in the hands of the
executors or administrators; it prevents persons interested in the event
of an action or special proceeding upon the merits from testifying to
conversations with the deceased, but it has no application to the present
situation.

APPEAL by the contestants, Delia Gratton and others, from
an order of the Supreme Court, made at the Clinton Trial
Term and entered in the office of the clerk of the county of
Clinton on the 9th day of June, 1919, denying contestants'
motion to set aside the verdict of a jury, and also from a decree
of the Surrogate's Court of the county of Clinton, entered
in said surrogate's office on the 3d day of July, 1919, admitting
the will of John Gratton, deceased, to probate.

*Arthur S. Hogue* and *John H. Booth*, for the appellants.

*C. J. Vert*, for the respondents.

WOODWARD, J.:

Although this case has been argued with great elaboration, there is, upon the merits, very little to be said against the verdict of the jury and the resulting decree. There is no substantial evidence tending to establish undue influence, as that term is understood in the law; little, if any, evidence of incompetency on the part of the testator, and no substantial controversy as to the due execution of the instrument propounded as the last will and testament of John Gratton. The contestants have had all the advantages growing out of a jury trial; no error is pointed out in the charge of the court which merits consideration, and, unless the testimony of one of the parties was subject to the limitations provided by section 829 of the Code of Civil Procedure, the order and decree should be affirmed.

John Gratton, on the 6th day of May, 1918, made and executed in due form of law his last will and testament. He died on the first day of June following, and soon thereafter this will was offered for probate. A citation returnable on the 15th day of July, 1918, was regularly issued, and upon that day objections to the probate of the will were filed. On the nineteenth day of August the surrogate of Clinton county made an order transferring the trial to the Supreme Court, directing that six specific questions of fact be tried and passed upon by the jury. The case came on for trial on the 17th day of December, 1918, resulting in answers to each of the questions propounded in favor of the validity of the will. Thereupon the surrogate decreed that the will be admitted to probate; and the contestants appeal from the order denying a motion to set aside the verdict, and from the decree admitting the will to probate.

John Gratton appears to have been married early in life. His wife, after bearing him four children, deserted him and went west, taking her only son, and an unborn daughter, with her. Two daughters were left to the care of John Gratton, who subsequently went through the form of marrying a woman known as Virginia, with whom he lived for many years, though it was known to both parties to this alleged marriage that the first wife was living and undivorced.

Third Department, January, 1921.          [Vol. 195.

The will now before the court provided for giving to his wife
$200 annually, and " all the rest and residue of my property
I give and bequeath to my beloved daughters Mary Ayotte
and Josephine LaMonde, share and share alike." These are
the daughters of the first wife who were left behind, and they
are likewise made the executrices of the will. It will be observed
that this will is not upon its face an unreasonable or unnatural
disposition of the property of this testator under the facts
as stated, and where a jury has answered all the questions
adversely to the contestants it is not the province of this
court to be astute to discover a method of defeating the
lawful purposes of a testator, though we might not approve
his marital conduct.

Virginia had brought two several actions for separation
from the testator, one in 1906 and another in 1914. The
first action was settled on a consideration satisfactory to the
parties and they resided together for several years afterward.
The second action was tried, resulting in a judgment against
the contentions of Virginia. Upon the trial of the issues
submitted by the surrogate, and which are here under review,
much testimony was adduced as to the family affairs, and
in the course of the investigation John H. Booth, who acted
as counsel in the litigation between John Gratton and Virginia,
was called upon to testify as to a meeting which occurred in
the office of Judge Healey back in 1914, at which Judge Healey,
Mrs. Ayotte, Mrs. LaMonde, John Gratton and the witness
were present. This witness testified that at this meeting one
or the other of the daughters who are the beneficiaries
under this will made a request that her father make a will in
behalf of herself and the other daughter, and that the father
refused to make such a will at that time. This was apparently
offered for the purpose of showing a disinclination on the
part of the father to make a will in behalf of the present
beneficiaries, and to show an importuning on their part. But
the surrounding circumstances indicate that this could have
but very remote connection with the making of the present
will in 1918. They were present in consultation over the then
pending litigation between the father and Virginia. The
question under consideration was the first wife and the
possibility of her making trouble in the event of the father's

dying, and the suggestion of the will grew out of this conference. It was in nowise a secret or privileged communication; it was made in the presence of counsel representing adverse parties and of a third person, besides the two daughters. After this witness had testified to this alleged request and refusal, Josephine LaMonde, one of the daughters involved, was called to the stand and after testifying to her relationship and her presence at the conference she was asked: " I call your attention particularly to the statement [of Mr. Booth] that you or your sister Mary Ayotte asked your father at that time that he make his will and leave you girls the property. Will you state whether you made any such request in substance or did your sister Mary Ayotte in your presence? "

This was objected to as incompetent under section 829 of the Code. The court overruled the objection, with an exception to the contestants, but added: " I do not allow it as a personal transaction between the testator and the witness. It is received only for its effect upon the testimony of Judge Booth." The witness answered: " I never asked my father," and on motion of contestants' counsel this answer was struck out.

The question was asked again in a slightly different form, the same objection and ruling were made, and the witness answered that she did not, and that she did not hear her sister make such a request.

Upon cross-examination this witness admitted that some such talk might have been had at this conference, so that the denial amounted simply to her declaration that neither she nor her sister asked her father at this semi-public conference to make a will in their behalf, though admitting that some such talk was had at the time by some one, and from other things appearing in the case it would seem that Mr. Booth was the one to suggest such action. It all related to a conference back in 1914; it was limited by the court to contradiction of testimony offered and received in behalf of the contestants, and it is difficult to understand how the testimony, assuming it to have been entirely incompetent, could have had any appreciable bearing upon the issues involved in the probate of this will.

But the purpose of section 829 of the Code of Civil Pro-

cedure is not to nullify the provisions of section 828 that
" a person shall not be excluded or excused from being a
witness, by reason of his or her interest in the event of an
action or special proceeding." This is the rule, and section
829 is a modification; it is a case where it is " otherwise
specially prescribed in this title," and we are not to extend
its language beyond its strict letter. It is only upon the trial
of an action " or the hearing upon the merits of a special
proceeding " that " a party or person interested in the event "
is not to " be examined as a witness in his own behalf " against
" the executor, administrator or survivor of a deceased person
*   *   * concerning a personal transaction or communication
between the witness and the deceased person or lunatic,
except where   *   *   * the testimony of the lunatic or
deceased person is given in evidence concerning the same
transaction or communication." Here Mr. Booth had testi-
fied that either one or both of the daughters had " said in
substance that the father ought to will the property to them,
and asked him to do it. He said he would not do it." This
is not technically the testimony of the deceased person in
evidence; it is the testimony of Mr. Booth as to what the
deceased person said; it purports to give both sides of a
conversation which occurred in the presence of several persons,
and the contestants having had the benefit of the alleged
conversation it would be a very remarkable condition of the
law if the person who was alleged to have had that conversa-
tion could not dispute the testimony of the living witness
who gave it. The purpose of section 829 of the Code of
Civil Procedure is to protect the estate in the hands of
the executors or administrators; it prevents persons interested
in the event of an action or a special proceeding upon the
merits from testifying to conversations with the deceased,
but it has no place in the situation here presented. Mrs.
Ayotte and Mrs. LaMonde were nominated in the will as
executrices, but they had no standing as such officials until
the will was probated and letters issued. They were not
before the court in this proceeding as executors; they were
there as proponents of the last will and testament of their
father. Their testimony could not have been " against the
executor, administrator or survivor of a deceased person;"

they were not testifying against the executors, but against the contestants. If the contestants succeeded · there would be no will; there would be no executors; they were not testifying˜to impose a burden upon the estate, but in support of the will made by their father, and at the particular time complained of they were merely contradicting the testimony of Mr. Booth, and we think the latter is not protected by anything in section 829 of the Code of Civil Procedure.

The order and decree should be affirmed.

All concur, JOHN M. KELLOGG, P. J., in result upon the ground that the alleged error in the admission of evidence was harmless and could not affect the result.

Order and decree affirmed, with costs.